# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RISA STEGALL, ) | |
| ) | |
| Plaintiff, ) | Case No. 14-cv-0178 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Carolyn Colvin's motion for summary judgment [48]. For the reasons set forth below, Defendant's motion is denied. Plaintiff's motion for leave to file a jury demand [46] is granted. This case is set for further status on August 18, 2016 at 9:30 a.m. to discuss trial dates and the possibility of settlement.

## I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements, construing the facts in the light most favorable to the nonmoving party—here, Plaintiff.[1]

The facts of this case are straightforward and largely undisputed. In May 2010, Plaintiff submitted an online application for a position at the Social Security Administration's Prospect Heights, Illinois office. The Social Security Administration posts its competitive job openings on the website usajobs.gov. This particular job posting was for a contact representative (also called

---

[1] Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule permits a movant to file up to 80 separately-numbered statements of undisputed facts. L.R. 56.1(a)(3). The rule also requires the nonmovant to file a concise response to the movant's statement of facts setting forth "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A).

a service representative). The major duties of a contact representative include responding to inquiries by telephone or mail, providing beneficiaries and others with information regarding benefits, supplying the public with appropriate forms and instructions, and making appropriate social service referrals.

The Social Security Administration uses a point system to determine who is eligible for an interview for a competitive position. Plaintiff has a service-connected disability stemming from a back injury that she sustained while performing food service preparation in the military. Because of this service-connected disability, Plaintiff earned a 10-point preference in her individual point score. The number of points that Plaintiff scored in her application, including the 10-point preference, put her within the top five applicants as calculated by the Social Security Administration's human resources department. The department sent the top applicants to district manager Elizabeth Williams, who was in charge of hiring for the position. On May 20 and 21, 2010, Ms. Williams interviewed five candidates for the position (three on May 20 and two on May 21), including Plaintiff.

Plaintiff was the second of five applicants interviewed for the position. When Plaintiff arrived for her interview, she was greeted by Ms. Williams, and then she proceeded to a process that the Social Security Administration refers to as a "meet and deal" certification, which essentially is a three-person interview. In this instance, Plaintiff met with George Pearson (the operations supervisor), Tina Arden (the management support specialist), and Ms. Williams.

The main dispute between the parties concerns the interaction between Plaintiff and Ms. Williams in the 15 minutes immediately following Plaintiff's "meet and deal" certification. Plaintiff says that during this discussion, Ms. Williams offered her the job contingent on Plaintiff passing a background check. Plaintiff was "convinced that [she] was hired." [66, ¶ 19.] Plaintiff

says that after Ms. Williams offered her the position, Plaintiff explained that she was currently enrolled in a vocational rehabilitation program at Hines VA Hospital, and that she would probably need frequent breaks because she was unable to sit for long periods of time due to a back injury. Plaintiff claims that immediately after she divulged this information, Ms. Williams' "entire demeanor changed; she stopped making eye contact and actually turned away from [Plaintiff]," and that "[a]bout ten days later, [Plaintiff] was informed by letter that she was not hired for the position." [60, at 3.] Ms. Williams denies that she ever offered Plaintiff the position, and she says that she does not recall Plaintiff divulging this information about the rehabilitation program, her medical condition, or her need for accommodations. After her interview, Plaintiff continued to apply for other jobs. [66, ¶ 22.]

The criteria that Ms. Williams used to select a candidate were (1) motivation for public service, (2) ability to multi-task, (3) good interpersonal and communication skills, (4) ability to be a team player, and (5) computer skills. Upon completing the five interviews Ms. Williams reported to her supervisor that an interviewee that the parties refer to as "Candidate 1" had a "fantastic interview, * * * was very professional and articulate in every response, [had] little hesitations, responded very appropriately to all the situational questions [the panel] gave her, [was] very personable and had the skills that [they] were looking for." [66, ¶ 24.] Ms. Williams added that Candidate 1 "would be an excellent candidate for additional promotions down the line," and concluded that Candidate 1 was "hands down" her first choice for the position. [66, ¶¶ 25–26.] Ms. Williams also reference a second candidate ("Candidate 2"), telling her supervisor that Candidate 2 "interviewed very well," noting that one of Candidate 2's references regarded her as a "great employee" and another "couldn't say enough about her," and concluding

that Candidate 2 "would be [her] second choice" for the position. [66, ¶ 27.] Ms. Williams interviewed Candidates 1 and 2 after she interviewed Plaintiff.

On May 27, 2010, Ms. Williams offered the position to Candidate 1, who initially accepted the position with a start date of June 21, 2010. On May 28, the Social Security Administration appointed Candidate 2 to a temporary summer position as a contact representative with a start date of June 7, 2010 and an end date of September 30, 2010.[2] On June 18, Candidate 1 declined the job offer to accept another position with the Social Security Administration. Ms. Williams then offered the position to Candidate 2, who accepted. As of her hire date, Candidate 2 did not request any accommodations for her disability. [69, ¶ 24.]

Ms. Williams claims that her primary reason for not selecting Plaintiff was that Plaintiff did not answer an interview question as well as the other candidates. More specifically, Ms. Williams says that when she asked Plaintiff why she wanted to work for the Social Security Administration, Plaintiff responded that she was looking for stability and looking forward to retirement. Ms. Williams felt that Plaintiff's response indicated that she was not motivated for public service. [66, ¶¶ 32–33.] Ms. Williams says that "[w]hat [she] was looking for was whether [Plaintiff] wanted to help people, not just if she wanted a job," and she felt that Plaintiff's response did not adequately address this concern. [74, ¶ 14.]

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also

---

[2] Candidate 2 was appointed pursuant to what is commonly referred to as "Schedule A," which grants federal agencies authority to appoint a person with "an intellectual disability, a severe physical disability or a psychiatric disability" outside of the competitive hiring process. See 5 C.F.R. § 213.3102(u). In 2010, the Social Security Administration required that any applicant seeking to be hired under Schedule A submit a certification letter from a licensed medical professional or other appropriate agency.

4

*Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.   Analysis

Defendant seeks summary judgment on the sole claim in Plaintiff's complaint, which is that Defendant discriminated against her on the basis of her disability in violation of

5

Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*. The Rehabilitation Act says that "[n]o otherwise qualified individual with a disability * * * shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by the Act. 29 U.S.C. § 794(a). "To succeed on a claim of employment discrimination under this statute, a plaintiff must prove that: (1) she is disabled within the meaning of the statute; (2) that she was otherwise qualified for the job in question; (3) that she was discharged or the subject of other adverse action solely because of her disability; and (4) the employment program of which her job was a part received federal financial assistance." *Felix v. Wisc. Dep't of Trans.*, 2016 WL 3618299, at *6 (7th Cir. 2016) (citing *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005); *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004); *Silk v. City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999)). Complaints alleging employment discrimination under the Rehabilitation Act are governed by the standards applied under the Americans with Disabilities Act. 29 U.S.C. § 794(d).

For summary judgment purposes, a Rehabilitation Act plaintiff may prove her case through either direct or indirect proof of discrimination. See *Novak*, 777 F.3d at 974. Under the direct method, "a plaintiff must present either direct evidence of discrimination or circumstantial evidence that creates a 'convincing mosaic' of discrimination." *Id.* (quoting *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009)). "Under the indirect method, a plaintiff must establish a prima facie case of discrimination by presenting evidence that (1) [s]he is disabled, (2) [s]he is qualified to participate in the program, (3) [s]he suffered an adverse action, and (4) nondisabled [applicants] were treated more favorably." *Id.* (citing *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014)). If the plaintiff establishes a prima facie case of discrimination, "the burden

6

then shifts to the defendant to articulate a legitimate, non-discriminatory reason for any alleged adverse action toward the plaintiff." *Id.* (citing *Bunn*, 753 F.3d at 685). "Upon articulating such a reason, the defendant 'is entitled to summary judgment unless the claimant can present sufficient evidence that the [defendant's] proffered reason is a pretext for discrimination.'" *Id.* (quoting *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004)).

## A. Direct Method

"Taken literally, direct evidence [of discrimination] would require an admission by the employer." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). However, a plaintiff can also establish direct discrimination through "circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 398 F.3d 776, 783 (7th Cir. 2004)). The Seventh Circuit has referred to this as a "'convincing mosaic' of circumstantial evidence, but fundamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Id.* (citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 957, 962 (7th Cir. 2010)).

Defendant argues that Plaintiff's "subjective opinions about Williams' supposed facial expressions do not suffice" to prove discrimination under the direct method." [49, at 7.] Defendant cites *Gittings v. Tredegar Corp.*, 2010 WL 4930998, at *7 (N.D. Ill. Nov. 29, 2010), where the plaintiff attempted to prove direct discrimination by "rel[ying] heavily—and nearly exclusively—on a * * * conversation with [defendant] in which [plaintiff] took [defendant's] facial expression to mean that he was displeased" with plaintiff's comments regarding his disability. The court concluded that these allegations fell short of creating a genuine issue of material fact as to whether the plaintiff was terminated because of his disability, noting that

7

"[p]urely subjective characterizations of a facial expression and an ensuing 'cold shoulder' do not an ADA discrimination claim make." *Id.*; see also *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010) ("[U]nfriendly glances and other subtle indicia of distaste generally fall short of establishing discrimination under [the direct] method of proof.").

While the facts of this case are similar to those in *Gittings*, as Plaintiff points out, her "testimony regarding the change in Williams' demeanor is only a part of the 'mosaic'" of circumstantial evidence establishing discrimination. [60, at 6–7.] Most importantly, Plaintiff claims that Ms. Williams actually offered her the job towards the end of the interview, and it was only after Plaintiff divulged her disability and her need for accommodation that Ms. Williams' demeanor changed dramatically, and 10 days later Plaintiff received a letter saying that she didn't get the job. See, *e.g.*, *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (listing "suspicious timing" as an example of relevant circumstantial evidence in proving discrimination under the direct method). While there is countervailing evidence showing that perhaps Plaintiff was not offered the job on the spot—*e.g.*, that Ms. Williams interviewed three additional candidates over the next 24 hours, and that Plaintiff continued job searching after this interview—a reasonable jury could credit Plaintiff's testimony and conclude that Ms. Williams did in fact offer Plaintiff the job. If so, then there are a limited number of rational explanations as to why Ms. Williams subsequently rescinded that offer, with discriminatory animus being one of them.

Although Plaintiff's "mosaic" is composed of only a few pieces (*e.g.*, the job offer, the divulging of the disability, the demeanor shift, and the rescission of the offer), because this is a failure-to-hire case where the interactions between Plaintiff and Defendant were extremely limited, these few components carry a greater evidentiary significance than they might otherwise

be given in a case with a more robust record. For example, *Gittings* was a wrongful termination case where the plaintiff alleged that he was terminated because of his disability. In assessing the plaintiff's claim that his employer was motivated to fire him because of his disability, the court noted that "the record paint[ed] precisely the opposite picture: that [the defendant] never harbored any animosity toward [the plaintiff] due to his [disability] from the time of his accident until his termination." *Gittings*, 2010 WL 4930998, at *7. The court found this "lack of animus" to be "extremely telling" in determining whether the defendant fired the plaintiff because of his disability, overshadowing the plaintiff's reliance on his subjective interpretation of his employer's facial expressions in a conversation regarding the plaintiff's disability. *Id.* Here, by contrast, because Plaintiff interacted with Ms. Williams for only an hour or so, there is a slim record from which to conjure evidence to combat Plaintiff's allegations of discrimination.[3]

Plaintiff has established sufficient circumstantial evidence such that a reasonable juror could infer that Ms. Williams refused to hire Plaintiff for discriminatory reasons. Accordingly, Defendant's motion for summary judgment on this issue must be denied.

**B.   Indirect Method**

Because Plaintiff presented sufficient evidence to survive summary judgment under the direct method, the Court need not evaluate her discrimination claim under the indirect method. See *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) ("Because [plaintiff] presented

---

[3] In its reply brief, Defendant focuses on the fact that Ms. Williams conducted three interviews (including those of Candidates 1 and 2, whom Ms. Williams contended were her first and second choices for the position) after she interviewed Plaintiff, and argues that "[o]ur employment laws do not punish changes of opinion after additional information comes to light." [70, at 7.] Defendant infers from the order of Ms. Williams' interviews, coupled with Ms. Williams' post-hoc assessment of the five interviews, that Candidates 1 and 2 were superior candidates to Plaintiff. But the jury also could infer—based on Plaintiff's contention that Ms. Williams offered her the job on the spot—that Plaintiff was the best candidate, and it was only after Plaintiff divulged her disability that Ms. Williams elected not to hire her, paving the way for Candidates 1 and 2 to assume the top spots. These are, of course, disputed issues of fact that are for the jury to decide.

sufficient evidence to survive summary judgment under the indirect method, there is no need to evaluate her discrimination claims under the direct method."); *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 589 (7th Cir. 2011) ("Because we conclude that both Diaz and Peña's failure-to-hire claims survive summary judgment when evaluated under the direct method of proof, we need not address the indirect method."); see also *Travis v. City of Chicago*, 2014 WL 4909060, at *7 (N.D. Ill. Sept. 30, 2014); *Margelewski v. Cosco Indus., Inc.*, 2008 WL 192326, at *6 (N.D. Ill. Jan. 18, 2008); *Diemer v. Fraternal Order of Police*, 2007 WL 4232701, at *15 (N.D. Ill. Nov. 29, 2007).

### C. Jury Demand

Plaintiff also moves the Court for leave for file a jury demand [46]. Plaintiff claims that she missed the deadline[4] for requesting a jury trial because of her *pro se* status, and she argues that Defendant will suffer no prejudice if a jury trial is granted and that issues of discrimination are best resolved by a jury. Despite the untimeliness of Plaintiff's request, the Court has discretion under Fed. R. Civ. P. 39(b) to grant a jury trial. See Fed. R. Civ. P. 39(b) ("[T]he court may, on motion, order a jury trial on any issue for which a jury might have been demanded."). The Seventh Circuit has instructed that "[i]n the absence of strong and compelling reasons to the contrary, untimely jury demands should be granted." *Merritt v. Faulkner*, 697 F.2d 761, 767 (7th Cir. 1983); *Members v. Paige*, 140 F.3d 699, 703 (7th Cir. 1998) ("Once [a reason for not meeting the deadline in Rule 38(b)] has been advanced, the district court 'ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation of that particular case, rather than with a fixed policy.'" (citation omitted)). The Seventh Circuit has also

---

[4] See Fed. R. Civ. P. 38(b)–(b)(1) ("On any issue triable of right by a jury, a party may demand a jury trial by[] serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served * * *.").

noted that "lack of counsel" is a relevant factor in considering whether to grant an untimely request for a jury trial. See *Members*, 140 F.3d at 703.

Here, Plaintiff's *pro se* status is clearly the (inadvertent) reason for her delay in requesting a trial by jury. Despite her untimely request, there is no detectable prejudice or unfair advantage to either party in allowing this case to proceed by jury trial. For example, granting a jury trial would not disrupt any existing schedules because, at this point, there is no pre-trial order in place and no trial date has been set. The Court also agrees that Plaintiff's claim of discrimination is one best resolved by a jury. See, *e.g.*, *Lawyer v. 84 Lumber Co.*, 1997 WL 24748, at *2 (N.D. Ill. Jan. 17, 1997) ("Claims of discrimination involve factual disputes as to the motivations for actions. Such issues do not require legal expertise and are better tried before a jury composed of a number of people instead of a single judge."). Upon consideration of the totality of the circumstances, the Court is persuaded that Plaintiff's failure to request a jury trial in a timely fashion was inadvertent, and that a jury trial is appropriate in this case. Accordingly, Plaintiff's motion [46] is granted.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [48] is denied. Plaintiff's motion for leave to file a jury demand [46] is granted. This case is set for further status on August 18, 2016 at 9:30 a.m. to discuss trial dates and the possibility of settlement.

Dated: July 22, 2016

_____
Robert M. Dow, Jr.
United States District Judge