# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RISA STEGALL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of the Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) <br> ) | Case No. 14-cv-178 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM AND OPINION ORDER

Plaintiff Risa Stegall brings this employment discrimination action against Nancy A. Berryhill, acting commissioner of the Social Security Administration. Plaintiff alleges that she was denied employment by the Social Security Administration because of a disability. Before the Court are Plaintiff's motions *in limine* [104], Defendant's motion *in limine* [102], and the parties' joint motion to resolve a dispute over the scope of certain trial exhibit redactions [114]. For the reasons set forth below, Plaintiff's motions *in limine* Nos. 1, 2, and 3 are granted in part and denied in part. The Court reserves ruling on Plaintiff's motion *in limine* No. 4. Plaintiff's motions *in limine* Nos. 5 and 6 are denied. Defendant's motion *in limine* [102] is granted. The Court grants the joint motion to resolve dispute over scope of certain trial exhibit redactions [114] and directs the parties on how to proceed with respect this issue below. This case remains set for a jury trial to commence on May 29, 2018 at 9:00 a.m.

## I.     Background

At issue in this case is whether the Social Security Administration (the "Defendant" or the "SSA") discriminated against Plaintiff Risa Stegall on the basis of her disability in violation

of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §701, et seq. In May 2010, Plaintiff applied for a position as a contact representative at the SSA's District Office in Prospect Heights, Illinois. The major duties of a contact representative include responding to inquiries by telephone or mail, providing beneficiaries and others with information regarding benefits, supplying the public with appropriate forms and instructions, and making appropriate social service referrals.

The SSA uses a point system to determine eligibility for an interview for a competitive position. Plaintiff has a service-connected disability stemming from a back injury that she sustained while performing food service preparation in the military. Because of this service-connected disability, Plaintiff earned a 10-point preference in her individual point score. The number of points that Plaintiff scored in her application, including the 10-point preference, put her within the top five applicants as calculated by the SSA's human resources department. The department sent the top applicants to district manager Elizabeth Williams, who was in charge of hiring for the position. On May 20 and 21, 2010, Ms. Williams interviewed five candidates for the position (three on May 20 and two on May 21), including Plaintiff.

Plaintiff was the second of the five applicants interviewed for the position. When Plaintiff arrived for her interview, she was greeted by Ms. Williams, and then she proceeded to a process that the SSA refers to as a "meet and deal" certification, which essentially is a three-person interview. In this instance, Plaintiff met with George Pearson (the operations supervisor), Tina Arden (the management support specialist), and Ms. Williams.

The central dispute between the parties concerns the interaction between Plaintiff and Ms. Williams in the 10-15 minutes immediately following Plaintiff's "meet and deal" certification. Each party disputes the other side's description of the conversation. Plaintiff says

that during this discussion Ms. Williams offered Plaintiff the job contingent on Plaintiff passing a background check. In an affidavit submitted under oath before she was represented by counsel, Plaintiff testified that after Ms. Williams offered her the position, Plaintiff told Ms. Williams that she was in a "psychiatric program that assists veterans in reentering the workforce" because Plaintiff "was having problems transitioning because of [her] back and depression." [110, at 14.] Plaintiff further testified that "[w]hen she informed Ms. Williams about the program, her entire demeanor and facial expression changed from being excited about [Plaintiff] being part of her team to the impression that she was dealing with a nut case." [110, at 14.] Plaintiff also claimed that she believed she was not hired because of her race. When asked why Plaintiff believed she was not hired because of her race, Plaintiff stated:

> The population of the City of Prospect Heights is predominately Caucasian. When I first came into the Prospect Heights Social Security Office I was dressed business professional. Some of the people turned their heads as if they were wondering why I was there and it appeared they thought I did not belong there. I told security that I was there for an interview and the gentleman told me to have a seat. Looking around, I did not see anyone of my race. My first impression was that I was a token. When Ms. Williams came out to escort me into her office, I scoped out the office again and could see no one of my race. After leaving, I looked around again and did not see anyone of my race. * * * Although Ms. Williams hired me, I still believe my race was a factor. I am a light-skinned Black individual and I believe she thought a light-skinned Black person was a better fit for the office. [110, at 17-18.]

Plaintiff also says that she explained that she was enrolled in a vocational rehabilitation program at Hines Veterans Administration Hospital, and that she would probably need frequent breaks because she was unable to sit for long periods of time due to a back injury. About ten days later, Plaintiff was informed by letter that she was not hired for the position.

Ms. Williams denies that she ever offered Plaintiff the position. Williams further states that she does not recall Plaintiff divulging any information about the rehabilitation program, her medical condition, or her need for accommodations. Ms. Williams claims that her primary

3

reason for not selecting Plaintiff was that Plaintiff did not answer an interview question as well as the other candidates. More specifically, Ms. Williams says that when she asked Plaintiff why she wanted to work for the Social Security Administration, Plaintiff responded that she was looking for stability and looking forward to retirement. Ms. Williams felt that Plaintiff's response indicated that she was not motivated for public service. After her interview, Plaintiff continued to apply for other jobs.

On May 27, 2010, Ms. Williams offered the contact representative position to Candidate 1, who initially accepted the position with a start date of June 21, 2010. On May 28, the SSA appointed Jung-Eun Cha—Candidate 2—to a temporary summer position as a contact representative with a start date of June 7, 2010 and an end date of September 30, 2010. On June 18, Candidate 1 declined the job offer to accept another position with the SSA. Ms. Williams then offered the contact representative position to Ms. Cha, who accepted. The SSA hired Ms. Cha under its "Schedule A" hiring authority, which involves offers of federal employment to individuals who have "an intellectual disability, a severe physical disability or a psychiatric disability." 5 C.F.R. 213.3102(u). There is no evidence before the Court regarding Ms. Cha's specific disability. As of her hire date, Ms. Cha had not requested any accommodations for her disability.

In June of 2010, Plaintiff filed a complaint of employment discrimination with the SSA. Plaintiff alleged that Defendant discriminated against her on account of her race (Plaintiff is African American) and her disabilities (both mental and physical). After the SSA issued a final agency decision denying Plaintiff's discrimination claim, Plaintiff appealed the decision to the Equal Employment Opportunity Commission ("EEOC"). [1, at 6-16.] On January 10, 2014, Plaintiff filed a pro se complaint for employment discrimination in this Court, again alleging that

Defendant discriminated against her on account of race and on account of her mental and physical disabilities. [1.] On July 14, 2014, the Court recruited counsel to represent Plaintiff. [23.] On January 12, 2016, Plaintiff voluntarily dismissed her claims of (1) race discrimination, and (2) discrimination on the basis of an alleged mental health disability or impairment. [45.] Currently before the Court are Plaintiff's motions *in limine* [104], Defendant's motion *in limine* [102], and the parties' joint motion to resolve dispute over scope of certain trial exhibit redactions [114].

## II. Legal Standard

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability * * * shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by the Act. 29 U.S.C. § 794(a). "To succeed on a claim of employment discrimination under this statute, a plaintiff must prove that: (1) she is disabled within the meaning of the statute; (2) that she was otherwise qualified for the job in question; (3) that she was discharged or the subject of other adverse action solely because of her disability; and (4) the employment program of which her job was a part received federal financial assistance." *Felix v. Wisc. Dep't of Trans.*, 2016 WL 3618299, at *6 (7th Cir. 2016) (citing *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). Complaints alleging employment discrimination under the Rehabilitation Act ("RA") are governed by the standards applied under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d).

"Trial courts issue rulings on motions *in limine* to guide the parties on what evidence [they] will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). The party seeking to exclude evidence "has the burden of establishing the evidence is not admissible

for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009); see also *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). As the trial progresses, the Court "remains free to alter earlier rulings" on motions *in limine*. *Perry*, 733 F.3d at 252; see also *Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "Furthermore, the court may defer ruling on a motion *in limine* until trial if the parties' arguments 'cannot be evaluated accurately or sufficiently * * * in such a procedural environment.'" *United States v. Mandell*, 2014 WL 464226, at *2 (N.D. Ill. Feb. 3, 2014) (quoting *Jonasson*, 115 F.3d at 440). Although motions *in limine* typically address evidentiary matters, they may also relate to other matters, such as affirmative defenses and proper lines of inquiry at trial. *United States v. Boender*, 2010 WL 811296, at *1 (N.D. Ill. Mar. 3, 2010) (citations omitted).

### III. Plaintiff's Motions *in Limine* [104]

#### A. Plaintiff's Motion No. 1: Bar Evidence Regarding Dismissed Claims

On January 12, 2016, Plaintiff voluntarily dismissed claims that she was discriminated against on account of race and on account of an alleged mental disability. [45.] Plaintiff moves to exclude any evidence or testimony relating to these claims under Federal Rule of Evidence 401 and Federal Rule of Evidence 403, arguing that evidence and testimony concerning the claims Plaintiff elected not to pursue have no relevance to her claim that she was discriminated against on account of her physical disability (*i.e.*, her back problems). Defendant has agreed not to elicit testimony regarding the procedural history of the voluntarily dismissed claims. Defendant argues, however, that evidence regarding Plaintiff's prior descriptions of her

interview with the SSA—which were made in connection with her dismissed claims—are relevant. The Court agrees. `

Regarding Plaintiff's dismissed race discrimination claim, Plaintiff argues that she has never suggested that Ms. Williams's demeanor changed because of her race. However, Plaintiff previously stated under oath that she believed she was not hired because of her race. Plaintiff also described—again under oath—her perception that the people she encountered prior to and after her interview thought she did not belong there because of her race. Plaintiff also described her belief that she was a "token" candidate. Although Plaintiff dismissed her race discrimination claim, Plaintiff's impression of those she encountered prior to and after her interview as well as Plaintiff's belief that Ms. Williams decided not to hire her because of her race are relevant to whether Plaintiff's characterizations of Ms. Williams's statements, actions, and overall demeanor—central issues in this case—are reliable and credible. Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Regarding Plaintiff's dismissed mental disability claim, Plaintiff recognizes that she previously stated that Ms. Williams's demeanor changed when Plaintiff told her that she was participating in a vocational rehabilitation program to address both her back condition and depression. [113, at 3.]. Plaintiff argues, however, that Plaintiff has always emphasized that the she was primarily in the program to address physical limitations, not because of her depression. *Id*. Although Plaintiff may testify that she told Ms. Williams that her primary reason for being in the program was to address physical limitations, Plaintiff submitted an EEOC affidavit stating that when she "informed Ms. Williams about the program, her entire demeanor and facial expression changed from being excited about [Plaintiff] being part of her team to the impression

7

she was dealing with a nut case." [110, at 3.]  Again, Plaintiff's characterizations of her interactions with Ms. Williams and Ms. Williams's demeanor are central to this case.

Plaintiff suggests that Plaintiff's prior statements should be disregarded because they were made before she was represented by counsel. The Court agrees that the legal theories presented by Plaintiff when she was not represented by counsel are not relevant and there is some risk that any efforts by Defendant to call attention to those withdrawn legal theories at trial could prejudice Plaintiff. Defendant will not be permitted to discuss the fact that Plaintiff brought race and mental disability claims when she was proceeding pro se unless Plaintiff first opens the door to such testimony. However, Plaintiff's prior characterizations of her interactions with Ms. Williams's and Williams's demeanor during the critical time period of this case—the 10-15 minute interview—are highly probative of what Plaintiff thought and the credibility of Plaintiff's entire account of the key events in the case. Indeed, this case will likely turn on whether the jury finds Plaintiff's impressions and account of the interview and its aftermath credible. Although Plaintiff was not represented by counsel at the time she made her prior statements, this does not mean that Plaintiff should be permitted to alter or sanitize her factual account of the critical time period to better fit her remaining legal theory.

Plaintiff also argues that the prejudicial effect of evidence relating to Plaintiff's dismissed claims substantially outweighs the probative value of the evidence and should be excluded under Rule 403, because the jury may speculate regarding why Plaintiff did not pursue her race or mental disability claims. To minimize the risk of any such speculation, the Court has excluded any evidence regarding the procedural history of Plaintiff's dismissed claims. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). But Plaintiff can hardly claim much *undue* prejudice from her voluntary decisions first to bring and then to dismiss those claims. In any event, given the importance of Plaintiff's impressions and account of her interview and her overall credibility, the possibility of juror speculation about alternative legal theories does not substantially outweigh the probative value of that evidence.

Accordingly, Plaintiff's motion *in limine* No. 1 is granted in part and denied in part. Defendant may introduce evidence and testimony regarding Plaintiff's statements about her interview with the SSA and any reasons that she gave for why she believed she was not hired, but without reference to any specific legal claims that Plaintiff has voluntarily dismissed or the procedural history of those claims without first seeking leave of the Court outside the presence of the jury.

### B. Plaintiff's Motion No. 2: Bar Evidence Relating to Depression

Plaintiff moves to exclude evidence relating to her depression, including evidence relating to a previous suicide attempt and evidence relating to her alcohol consumption. Defendant has categorically agreed not to introduce evidence regarding Plaintiff's suicide attempt. Defendant has further agreed not to introduce evidence regarding Plaintiff's alcohol consumption unless Plaintiff first opens the door to the subject. Defendant argues, however, that it should be allowed to admit evidence of Plaintiff's depression as it relates to statements that Plaintiff made during or after her interview with Ms. Williams and Plaintiff's characterizations of Ms. Williams's demeanor during the interview. For the reasons discussed above, the Court agrees with Defendant.

Accordingly, Plaintiff's motion *in limine* No. 2 is granted in part and denied in part. Defendant may introduce evidence regarding Plaintiff's statements to the extent that they relate

to Plaintiff's interview with the SSA, as discussed above. Defendant may not introduce other evidence regarding Plaintiff's depression or suicide attempt. Defendant may not introduce evidence of Plaintiff's alcohol consumption without first seeking leave of the Court outside the presence of the jury.

        **C.     Plaintiff's Motion No. 3: Bar Evidence Relating to Depression Medication**

Plaintiff moves to exclude evidence relating to depression medication taken by Plaintiff. Plaintiff acknowledges that at some time in the past she took medication that made her hallucinate and caused short-term memory problems. Plaintiff has made arguably inconsistent statements in sworn statements regarding whether she was on this medication at the time of her interview. [110, at 26, 29.] Defendant contends that the side-effects of medication Plaintiff may have been taking at the time of the interview are relevant to Plaintiff's credibility. Defendant further contends that Plaintiff's contradictory statements regarding whether she was even on medication at the time of the interview also are relevant to Plaintiff's credibility—relating to both Plaintiff's veracity and Plaintiff's impairment on the day of the interview.

With respect to side-effect of hallucinations, Plaintiff testified under oath that she was not experiencing any hallucinations during her interview with the SSA. [104-2, at 3.] Furthermore, there is no evidence indicating that Plaintiff experienced any hallucinations during her interview. To the contrary, even though Plaintiff was not hired by the SSA, she generally received positive remarks regarding her interview. Given that there is no evidence that Plaintiff was hallucinating during her interview—something that the interviewer surely would have noted had it occurred— evidence that Plaintiff may have been taking medication that at other times caused her to hallucinate has little relevance. Furthermore, given the stigma associated with hallucinations, the probative value of such evidence is substantially outweighed by its prejudicial effect.

10

Defendant may, however, introduce evidence that Plaintiff was on medication that caused short-term memory problems at the time of the interview, which is relevant to the jury's assessment of Plaintiff's account of the interview. See *Cole v. Bertsch Vending Co., Inc.*, 766 F.2d 327, 334-35 (7th Cir.1985) (evidence of alcohol consumption prior to accident was relevant to witness's recollection of events); *Mowrey v. City of Fort Wayne*, 2013 WL 6512664, at *5 (N.D. Ind. Dec. 12, 2013) (concluding that whether plaintiff was intoxication or under the influence of any narcotics at the time of the incident is relevant to the jury's evaluation of his credibility and thus admissible for the purposes of challenging his perception of the events). Although Defendant will not offer expert testimony regarding the effects of the medications generally or on Plaintiff, Plaintiff testified that she experienced memory problems that she believed were caused by her medication. [110, at 35; *cf. United States v. Plescia*, 48 F.3d 1452, 1464 (7th Cir. 1995) (holding that district court properly excluded line of cross-examination regarding witness's use of Prozac where there was no expert evidence on the effects of the medication generally or on the witness).] The Court will not bar Defendant from introducing Plaintiff's inconsistent statements regarding whether she was on medication that caused short-term memory problems at the time of the interview, as those statements may be relevant to assessing Plaintiff's credibility.[1]

Plaintiff argues that the jury might improperly conclude that Plaintiff's credibility is diminished just because she was taking depression medication. This point is well-taken. The prejudicial effect of introducing evidence regarding the name of the medication Plaintiff was taking or the reason Plaintiff was taking the medication (*i.e.*, to treat depression) substantially

---

[1] Plaintiff argues that it would be unfair to allow Defendant to cross-examine Plaintiff regarding these inconsistent statements, asserting that such inconsistencies are inevitable when a pro se plaintiff repeatedly is asked the same question. Plaintiff is free to make this point in its closing argument. Furthermore, even though the Court is not categorically excluding this evidence, the Court may sustain objections to extensive questioning on these statements for that very reason.

outweighs the minimal probative value of such evidence. Defendant therefore is barred under Rule 403 from introducing evidence regarding the name of the medication or the reason Plaintiff was taking the medication.

In sum, Plaintiff's motion *in limine* No. 3 is granted in part and denied in part. Defendant may introduce evidence and testimony regarding the fact that Plaintiff may have been on medication that caused her to experience short-term memory problems. Defendant is not barred from introducing Plaintiff's inconsistent statements regarding whether she was on medication that caused short-term memory problems at the time of the interview. Defendant is barred, however, from introducing evidence or testimony regarding Plaintiff's prior hallucinations. Defendant may not introduce evidence or testimony regarding the name of the medication or the reason Plaintiff was taking the medication. Defendant shall consult with Plaintiff regarding any redactions to exhibits or potential impeachment material necessary to comply with this ruling.

> D. **Plaintiff's Motion No. 4: Bar Evidence Regarding Statements to the Illinois Secretary of State**

When Plaintiff attempted to open a daycare company, she made false statements to the Illinois Secretary of State regarding the company's income and number of employees. Plaintiff argues that evidence regarding the false statements she made to the Illinois Secretary of State should be barred as irrelevant under Rule 401. Plaintiff further argues that such evidence should be excluded under Rule 403 because it would cause the jury to believe that Plaintiff was not truthful and therefore would be prejudicial.

Rule 608(b) "expressly affords the trial judge broad discretion to allow * * * questioning regarding prior instances of conduct if they are probative of the character for truthfulness or untruthfulness of the witness." *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 800 (7th Cir. 2016) (citations omitted). Plaintiff's false statements to the Illinois Secretary

of State are probative of Plaintiff's character for truthfulness. See *United States v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014) ("As a general matter, lying on financial documents such as tax returns or financial aid applications would seem to be an archetype of conduct bearing on truthfulness.").

This does not mean, however, that such evidence automatically is admissible. Under Rule 403, the Court may exclude "relevant evidence if its probative value is substantially outweighed by a danger of * * * unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This is true even when the evidence would otherwise be admissible under Rule 608. *United States v. Abair*, 746 F.3d 260, 263-64 (7th Cir. 2014).

Plaintiff has not shown any "unfair prejudice" that would result from the admission of evidence regarding Plaintiff's false statements to the Secretary of State. The only "unfair prejudice" identified by Plaintiff is the risk that the jury will believe that Plaintiff is untruthful. But Rule 608 specifically contemplates the use of such evidence for precisely that purpose. "'[U]nfair prejudice' under Rule 403 means an undue risk that the jury will decide the case on an improper basis—usually, though not always, because the proffered evidence appeals to emotion more than fact or reason." *Thompson v. City of Chicago*, 722 F.3d 963, 976 (7th Cir. 2013). Plaintiff's false statements to the Secretary of State would be elicited to establish Plaintiff's character for untruthfulness—not for an improper use.

The Court recognizes, however, the possibility that the introduction of this evidence may present a danger of confusing the issues, misleading the jury, undue delay, and/or wasting time. If Plaintiff is questioned regarding her false statements, Plaintiff will likely want to explain why she made the false statements. Plaintiff contends that she believed she needed reported income

and employees in order to obtain a tax identification number. [104, at 6.] At her deposition, she also testified that she made the false statements by mistake because she was "not an attorney and [she] didn't know exactly what [she] was doing" in filling out the application. [113-1, at 10.] It is not clear at this time that the probative value of this line of questioning justifies allowing Defendant to pursue it. The probative value of testimony on this issue may well depend on how Plaintiff portrays herself in Court. Thus, the Court reserves ruling on Plaintiff's motion *in limine* No. 4 until it has had the opportunity to hear Plaintiff's direct testimony. However, to the extent that the Court may allow such cross-examination, Plaintiff would not be allowed to introduce extrinsic evidence of the false statements. See Fed. R. Evid. 608(b).

E. **Plaintiff's Motion No. 5: Bar Evidence Regarding Jung-Eun Cha's Disability**

Plaintiff moves to exclude evidence regarding an unknown disability of Jung-Eun Cha— the person ultimately hired by the SSA. There is no evidence in the record of Ms. Cha's specific disability. But the SSA hired Ms. Cha under its Schedule A hiring authority, which involves offers of federal employment to individuals who have "an intellectual disability, a severe physical disability or a psychiatric disability." 5 C.F.R. 213.3102(u).

Plaintiff argues that she need not establish that someone outside her protected class was selected to establish her prima facie case. [104, at 7 (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 (3d Cir. 1999)).] Plaintiff also argues that because Ms. Cha's disability is unknown and because Ms. Cha did not request an accommodation before she was hired, Ms. Cha is an inadequate comparator. *Id.* Defendant recognizes that the fact that a person of the same class was ultimately hired is not outcome determinative, but argues that it nonetheless is "material to the question of discriminatory intent." [110, at 8 (quoting *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)).] The relevant case law indicates that "information

concerning whether an employer discriminated against other members of the same class for the purposes of hiring or job classification may cast light on whether an individual person suffered discrimination." *E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011); see also *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." (citations omitted); *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990) (recognizing that evidence regarding the attributes of "a successor employee may have evidentiary force"). Accordingly, Plaintiff's motion *in limine* No. 5 is denied.

The fact that Ms. Cha's specific disability is unknown and the fact that she did not request an accommodation may bear on the weight of this evidence, and Plaintiff is free to argue that the jury therefore should not place much weight on this evidence. But it is for the jury to determine what weight to give the evidence.

### III. Defendant's Motion *In Limine No. 1 and Plaintiff's Motion In Limine No. 6*

Both parties filed motions *in limine* regarding the admissibility of testimony and evidence relating to a 2015 physical examination Plaintiff was required to undergo in connection with an internship Plaintiff applied for with the Veterans Administration ("VA"). Defendant argues this evidence is relevant to whether Plaintiff was disabled at the time she applied for a job with Defendant in 2010. In support of this argument, Defendant cites to social security cases holding that "medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." [102, at 3 (quoting *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984)).] Plaintiff argues that the social security cases relied upon by Defendant are distinguishable because social security claims look to whether the claimant was

disabled during a range of time, while ADA and RA claims look to whether the claimant was disabled at a finite moment (*i.e.* the time of the employment decision). [113, at 12.] Plaintiff further notes that under the ADA and RA, "'even temporary impairments' may be disabilities." *Id*. (quoting *Yinger v. Postal Presort*, 693 Fed. App'x 768, 773 (10th Cir. 2017)).

The Seventh Circuit has recognized that "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984); see also *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (reversing exclusion of evidence regarding subsequent medical examination in excessive force case). Although the requirements for establishing a disability in social security cases may be different than the requirements for establishing a disability in ADA and RA cases, this does not change the general relevance analysis. *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372, 1381 (Fed. Cir. 2009) ("[A]lthough the regulatory scheme and standard on review are different in Social Security cases, the reasoning of these cases also provides support for the general principle that later medical evidence can be relevant.").

Furthermore, even though temporary disabilities may be sufficient to establish a disability for the purposes of ADA and RA cases, Plaintiff has indicated at times that her condition was permanent and had actually worsened from 2010 to 2015. [See, *e.g.*, 110, at 12, 36.] Yet in 2015—in connection with job Plaintiff applied for with Veterans Affairs ("VA")—Plaintiff executed a certificate of medical examination certifying that she "did not have any medical disorder or physical impairment which would interfere in any way with the full performance of her duties." [102-4, at 3.] The nature of the job with the VA was sedentary office work, similar

to the SSA customer service position that is at the heart of this dispute.[2]  Furthermore, the notes from the physical examination conducted by physician's assistant Timothy Newcomb indicates that Plaintiff reported a pain score of zero on a zero-to-ten pain scale and that she had no health issues "that would limit or restrict the functional requirements or environmental factors" of the job for which she was applying with the VA.  [102-5, at 2.]  Plaintiff disputes the significance of this statement to Newcomb, contending that in context it should carry little or no significance.  But this is another argument about the weight of evidence, not about its admissibility under the relevance standard.

Defendant should be entitled to show that Plaintiff's alleged statement to Ms. Williams that her injury was "permanent" lacks credibility because Plaintiff told a medical provider, outside the context of litigation, that she felt fine and did not have any limitations on her ability to work.  Defendant also should be allowed to present for the jury's consideration all of Plaintiff's statements about her back condition, so that the jury can resolve the fact questions surrounding the length and extent of that injury.  Accordingly, Plaintiff's motion *in limine* No. 6 is denied and Defendant's motion *in limine* is granted.

**IV.   Joint Motion [114] to Resolve Redaction Dispute**

The parties filed a joint motion [114] to resolve a dispute over the scope of certain trial exhibit redactions.  Defendant seeks to introduce at trial five declarations that job applicants submitted to the SSA as part of the job application process for the position at issue in this case.  The declarations were submitted by Plaintiff and four other applicants—two who were ultimately offered a job and two who were not.  The declarations contain a series of yes-or-no questions

---

[2] The SSA customer service position, involved communicating information orally to members of the public; performing clerical tasks on a computer; and writing correspondence.  [102-1.]  Similarly, the VA position description described the job as "sedentary" and stated it involved developing clinical reports, attending meetings, and becoming familiar with the strategic goals of VA working groups.  [102-2.]

about past criminal convictions, criminal charges, adverse employment actions, federal debts, etc. On Plaintiff's declaration, she inadvertently checked "yes" regarding a question about prior convictions of a crime, later crossing it out and checking "no."

Plaintiff believes that the error will cause the jury to improperly and prejudicially speculate about Plaintiff's criminal history. To address this concern, Defendant has agreed to redact all answers to the questions on each declaration. Defendant has also agreed to read a stipulation that no candidates were disqualified based on the background check or based on their answers to the background check. Plaintiff argues that this does not solve the problem, arguing that the approach is unnecessarily complicated and will lead to further speculation. Plaintiff therefore proposes that Defendant offer oral testimony as to its process and/or utilize a blank form to describe the steps in the process.

Plaintiff's proposed approach unduly limits Defendant's presentation of its evidence. Plaintiff alleges that Ms. Williams hired her during her job interview. Defendant wants to introduce the declarations to show what role the information provided by the applicants in these declarations plays in pre-hire suitability determinations, supporting Defendant's contention that Ms. Williams could not and did not extend an offer of employment to Plaintiff at her interview. Defendant also intends to use Plaintiff's declaration to show that Plaintiff signed the section of the document indicating that she was aware that she had not been offered the position at the time of the interview. Redacting the questions on the form or requiring that Defendant use a blank form would undermine the force of the evidence.

Redacting the answers to the yes-or-no questions on all of the declarations sufficiently addresses Plaintiff's concerns. Accordingly, the Court approves the redaction format used in in Exhibit 2 [114-2] of the joint motion [114]. Given that Defendant will redact other personal

information in the declarations (e.g. social security numbers, birthdates) and will use the same redactions for all the declarations (not just Plaintiff's declaration), it is unlikely that the jury will draw any negative inferences from the redactions. And any lingering concern about any such inferences is amply alleviated by the stipulation proposed by Defendant.

## V. Conclusion

For the reasons set forth below, Plaintiff's motions *in limine* Nos. 1, 2, and 3 are granted in part and denied in part. The Court reserves ruling on Plaintiff's motion *in limine* No. 4. Plaintiff's motions *in limine* Nos. 5 and 6 are denied. Defendant's motion *in limine* [102] is granted. The Court grants the joint motion to resolve dispute over scope of certain trial exhibit redactions [114]. This case remains set for a jury trial to commence on May 29, 2018.

Date: May 23, 2018

_____
Robert M. Dow, Jr.
United States District Judge